## Tower's Estate.

*Wills—Construction—Gift in trust—Power of trustee to invest.*
    A testator gave the residue of his estate in trust to "invest and keep invested" and "to preserve such investments and securities as I shall leave standing in my name so long as they......shall deem prudent" with "full power to select any investment or securities they may approve except the capital stock of corporations." Part of such residue of testator's estate consisted of 500 shares of stock in a certain corporation, which, after testator's death doubled its capital stock and gave to each stockholder the right to subscribe for additional shares, equal in amount to his holdings. The trustees subscribed for the additional stock and on the audit of their ac-

count the court refused to confirm it on the ground that they were without power under the terms of the will to make such investment. *Held,* such investment was preserving testator's proportionate holding of the capital stock of the company, and was proper for the trustees to make.

Argued March 22, 1916.   Appeal, No. 78, Jan. T., 1916, by Charlemagne Tower, Jr., Julius A. Bailey and Earl B. Putnam, Trustees of the Estate of Charlemagne Tower, Deceased, from decree of O. C. Philadelphia Co., July T., 1890, No. 199, dismissing exceptions to adjudication in Estate of Charlemagne Tower, Deceased.  Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ.  Reversed.

Exceptions to adjudication of DALLETT, P. J.

The opinion of the Supreme Court states the facts.

The court in banc dismissed the exceptions to the adjudication in an opinion by ANDERSON, J.

Charlemagne Tower, Jr., Julius A. Bailey and Earl B. Putnam, Trustees, appealed.

*Error assigned* was in dismissing the exceptions.

*John G. Johnson,* with him *Maurice Bower Saul,* for appellants, cited: Darlington's Est., 245 Pa. 212.

No paper book or appearance for appellee.

OPINION BY MR. CHIEF JUSTICE BROWN, April 17, 1916:

The testator, after making certain bequests and legacies, gave the residue of his estate to his executors in trust, providing, inter alia, as follows: "In trust nevertheless to take possession of, hold, manage and appropriate the same and to collect, receive, obtain and recover all the rents, issues, profits, income, dividends and gains thereof and all the proceeds and avails thereof, and to invest and keep invested the same and every part of the capital thereof, so as to make the same as productive as

reasonably can be, and to keep proper accounts, as here-inafter more particularly directed in respect to the said trust property and the proceeds, avails and income there-from, hereby directing them to preserve such investments and securities as I shall leave standing in my name, so long as they, my said trustees, or their successors in the trust, shall deem prudent, and making such new invest-ments as they in their best judgment and discretion shall deem advisable and advantageous to my estate, without confining themselves to such investments as the law di-rects for the investment of trust funds, hereby allowing them full power to select any investments or securities they may approve except the capital stocks of corpora-tions and obligations not accompanied with reason-able securities, with full power also to the said trustees to change any such investments, whether left by me or made by them, and to convert and reinvest the proceeds whenever and as often as they in their judgment and dis-cretion may think most to the advantage of my estate."

Among the investments of the testator at the time of his death were five hundred shares of the capital stock of the Fidelity Trust Company. Some time before the trustees filed their account in the court below that com-pany doubled its capital stock and gave to each stock-holder the right to subscribe, at par, for additional shares, equal in amount to his or her holdings. The ap-pellants, as trustees, exercised this right, subscribed and paid for the additional stock, filed an account, in which the transaction was set forth, and, having come into court with a petition for distribution, asked it to confirm their account. No objection was made to it by any party in interest. The auditing judge, however, in inter-preting the above-quoted clause, held that the appellants' exercise of their right to take the shares of the capital stock of the said company allotted to them could not be approved. Exceptions to the adjudication were dis-missed by the court in banc. The adjudicating judge was of opinion that, if the accountants had invested in new

stock of the company such an amount as would have been received by them from a sale of their rights to subscribe for the shares allotted to them, such an investment might reasonably be regarded as a continuance of testator's investment, under his direction to them "to preserve such investments and securities as I shall leave standing in my name, so long as they, my said trustees, or their successors in the trust, shall deem prudent." This distinction we cannot follow. If the trustees can sell the shares allotted to them, or their rights to subscribe for them, and, with the proceeds of such sale or sales, purchase new capital stock of the Fidelity Trust Company, without violating the direction of the testator as to the preservation of his investments and securities, it would seem a fortiori that they can take up what has been allotted to them on the capital stock which came to them from him.

The shares of the capital stock of the Fidelity Trust Company held by the testator at the time of his death were an investment made by him, and his injunction to his executors and trustees is to preserve it. To preserve is to keep, to save, to maintain, to retain. What the trustees did in taking up the allotments was the preservation of the investment made by the testator. If they had not taken them up, they might fairly have been regarded as ignoring his direction to them. What they have done is clearly in keeping with his instruction as to what they should do. They have done manifestly what he would have done, if living, with the investment which he had made, and their account should have been confirmed. They have but kept and preserved his proportionate holding of the capital stock of the company. The decree of the court below is reversed and the account of the trustees is now confirmed, the costs below and on this appeal to be paid out of the funds in the hands of the accountants.